Magomed Gusein Gasanov (Cal. SBN 368130)
MGG Law, PC
468 N. Camden Dr., Ste. 208
Beverly Hills, CA 90210
Tel.: (213) 642-9978
Email: gasanov@mgg.law

*Attorney for Petitioner Mohamed Adan Dahir*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

| | |
|---|---|
| MOHAMED ADAN DAHIR,<br><br>Petitioner,<br><br>v.<br><br>ERNESTO SANTACRUZ, JR., Field Office Director, Los Angeles Field Office, U.S. Immigration and Customs Enforcement; DAVID J. VENTURELLA, Acting Director, U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of Homeland Security; TODD BLANCHE, Attorney General of the United States; WARDEN, Adelanto ICE Processing Center, in their official capacities,<br><br>Respondents. | Case No. 5:26-cv-06468<br><br>VERIFIED PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241<br><br>A249-139-298 |

# TABLE OF CONTENTS


**I. INTRODUCTION** ............ 3

**II. CUSTODY, JURISDICTION, AND VENUE** ............ 3

**III. PARTIES** ............ 5

**IV. EXHAUSTION** ............ 5

**V. STATEMENT OF FACTS** ............ 6

**A. Entry and Placement in Full Removal Proceedings (October–December 2024)** ... 6

**B. Release Under INA § 236 (December 6, 2024)** ............ 7

**C. Full Compliance with Release Conditions (2024–2026)** ............ 8

**D. Re-Detention at a Scheduled Check-In (October 15, 2026)** ............ 8

**VI. CLAIM FOR RELIEF: VIOLATION OF PROCEDURAL DUE PROCESS (FIFTH AMENDMENT)** ............ 9

**A. Petitioner Has a Protected Liberty Interest** ............ 10

**B. The Mathews Factors Required a Hearing Before Re-Detention** ............ 12

**C. The Remedy Is Immediate Release on Prior Conditions** ............ 14

**D. A Limited Permanent Injunction Is Warranted** ............ 15

**PRAYER FOR RELIEF** ............ 16

**VERIFICATION BY COUNSEL PURSUANT TO 28 U.S.C. § 2242** ............ 17

**EXHIBIT INDEX** ............ **Error! Bookmark not defined.**

## I. INTRODUCTION

1. Petitioner Mohamed Adan Dahir is an asylum seeker from Somalia. On December 6, 2024, Respondents released him from immigration custody into the community. For more than twenty-two months he complied with every condition of that release.

2. He lived at the address he gave ICE on release, in Anaheim, California, and appeared at every check-in ICE scheduled at its Santa Ana office. He has never been arrested. His asylum application is pending before the immigration court.

3. On September 30, 2026, ICE mailed Petitioner a letter directing him to report to its Santa Ana office on October 15, 2026, "[t]o discuss the status of [his] immigration case and make any necessary custody or program adjustments." He appeared as directed. ICE took him into custody. ICE gave him no reason, identified no violation or change in circumstances, and gave him no opportunity to be heard before a neutral decisionmaker. He is now confined at the Adelanto ICE Processing Center.

4. The Due Process Clause of the Fifth Amendment does not allow the government to revoke a person's conditional liberty this way. Petitioner asks the Court to restore the status quo ante by ordering his immediate release on the conditions that governed him before October 15, 2026. He also asks the Court to bar re-detention without notice and a pre-deprivation hearing.

## II. CUSTODY, JURISDICTION, AND VENUE

5. Petitioner is in Respondents' physical custody at the Adelanto ICE Processing Center, 10250 Rancho Road, Adelanto, California 92301. He is "in custody under or by color of the authority of the United States" and "in violation of the Constitution." 28 U.S.C. § 2241(c)(1), (3).

6. This Court has subject-matter jurisdiction under 28 U.S.C. § 2241, 28 U.S.C. § 1331, and Article I, § 9, cl. 2 of the Constitution (the Suspension Clause). Federal courts have habeas jurisdiction to review the lawfulness of civil immigration

detention. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001); *Demore v. Kim*, 538 U.S. 510, 516–17 (2003).

7. No provision of 8 U.S.C. § 1252 strips jurisdiction over this petition. Petitioner does not challenge a removal order, the decision to commence proceedings, or the execution of a removal order. He challenges only the constitutionality of his present detention. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–95 (2018) (plurality) (§ 1252(b)(9) does not bar detention challenges); *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) (§ 1252(g) is limited to three discrete actions). Section 1226(e) likewise does not bar constitutional claims. *Demore*, 538 U.S. at 516–17. And although DHS's authority to revoke parole is discretionary, courts retain jurisdiction over constitutional challenges to its exercise. *Hassan v. Chertoff*, 593 F.3d 785, 789 (9th Cir. 2010); *Isiev v. Santacruz*, No. 5:26-cv-1033-CV (DFM), Dkt. 10 at 4–5 (C.D. Cal. Mar. 12, 2026).

8. The Court may grant declaratory and injunctive relief ancillary to the writ under 28 U.S.C. §§ 2201–02 and 2243, and the All Writs Act, 28 U.S.C. § 1651. Petitioner asks that any order to show cause under § 2243 direct Respondents to identify the statutory provision they contend authorizes his detention, state any condition of release he allegedly violated, and lodge the arrest warrant, Form I-213, and any record of the decision to revoke his release. *See Asihene v. Blanche*, No. 2:26-cv-01249, 2026 U.S. Dist. LEXIS 170211 (D. Nev. July 31, 2026); *Shire v. ICE*, 2026 U.S. Dist. LEXIS 176288 (D. Nev. Aug. 7, 2026).

9. Venue is proper in this District because Petitioner is confined in San Bernardino County, within the Central District of California. *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004); 28 U.S.C. § 1391(e). The Eastern Division is the proper division because Adelanto lies in San Bernardino County.

## III. PARTIES

10. Petitioner Mohamed Adan Dahir, A249-139-298, is a native and citizen of Somalia. He is detained at the Adelanto ICE Processing Center.

11. Respondent Warden of the Adelanto ICE Processing Center is Petitioner's immediate physical custodian and is named in his or her official capacity.

12. Respondent Ernesto Santacruz, Jr. is the Field Office Director of the Los Angeles Field Office of U.S. Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations, which has administrative jurisdiction over Petitioner's detention. He is a legal custodian of Petitioner and is named in his official capacity.

13. Respondent David J. Venturella is the Acting Director of ICE. He is a legal custodian of Petitioner and is named in his official capacity.

14. Respondent Markwayne Mullin is the Secretary of Homeland Security. He is responsible for the administration of the immigration laws and is a legal custodian of Petitioner. He is sued in his official capacity.

15. Respondent Todd Blanche is the Attorney General of the United States. He oversees the Executive Office for Immigration Review, including the Immigration Courts and the BIA, and is named in his official capacity.

## IV. EXHAUSTION

16. No statute requires exhaustion before a § 2241 petition challenging immigration detention. Any exhaustion requirement is prudential, and the Court may waive it where administrative remedies are inadequate or futile, or where requiring exhaustion would cause irreparable injury. *Laing v. Ashcroft*, 370 F.3d 994, 998, 1000 (9th Cir. 2004); *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007).

17. No adequate administrative remedy exists. DHS first processed Petitioner for expedited removal under 8 U.S.C. § 1225(b)(1), then charged him in the Notice to Appear as present in the United States without having been admitted or paroled (¶¶ 22–23). The Board of Immigration Appeals has held that immigration judges

lack authority to hear bond requests from noncitizens who are present without admission, because it treats them as applicants for admission detained under 8 U.S.C. § 1225(b)(2)(A). *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). The Board has also held that a noncitizen apprehended at entry and later released remains subject to detention under § 1225(b) and is ineligible for bond. *Matter of Q. Li*, 29 I&N Dec. 66 (BIA 2025). And the Attorney General has held that noncitizens transferred from expedited removal to full removal proceedings after a credible fear screening are ineligible for bond. *Matter of M-S-*, 27 I&N Dec. 509 (A.G. 2019). Petitioner has received no bond hearing since his re-detention (¶ 39).

18. No regulation provides an administrative appeal from ICE's revocation of release or termination of parole. *See* 8 C.F.R. §§ 212.5(e), 236.1(c)(9). Neither an immigration judge nor the Board can adjudicate the constitutional claim raised here.

19. Requiring exhaustion would also cause irreparable injury. Each day of unconstitutional confinement is a loss of liberty that cannot be restored after the fact.

## V. STATEMENT OF FACTS

### A. Entry and Placement in Full Removal Proceedings (October–December 2024)

20. Petitioner is a native and citizen of Somalia. Ex. A at 1; Ex. B at 1. His language is Somali. Ex. B at 2; Ex. C.

21. On or about October 31, 2024, Petitioner entered the United States near Calexico, California, without inspection. Ex. A at 1; Ex. B at 1 (Allegations 3–5).

22. On November 1, 2024, U.S. Border Patrol issued a Notice and Order of Expedited Removal (Form I-860) under INA § 235(b)(1), 8 U.S.C. § 1225(b)(1), finding Petitioner inadmissible under INA § 212(a)(7)(A)(i)(I). Ex. A at 1. Petitioner remained in DHS custody in Los Fresnos, Texas. Ex. B at 1; Ex. C.

23. On December 1, 2024, a Supervisory Asylum Officer in Houston, Texas issued a Notice to Appear (Form I-862). Ex. B at 1. The NTA states that the expedited removal order "was vacated pursuant to" 8 C.F.R. § 208.30, the regulation

governing credible fear determinations, and places Petitioner in full removal proceedings under INA § 240, 8 U.S.C. § 1229a. *Id.* The NTA does not designate Petitioner an "arriving alien." It charges him as "an alien present in the United States who has not been admitted or paroled," inadmissible under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). *Id.* Petitioner signed the NTA's certificate of service. *Id.* at 2.

**B. Release Under INA § 236 (December 6, 2024)**

24. On December 6, 2024, ICE released Petitioner from custody. ICE's Notice of Custody Determination (Form I-286), issued "[p]ursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations," determined that, pending a final administrative determination in his case, Petitioner would be "[r]eleased" "[u]nder other conditions." Ex. C. A Supervisory Detention and Deportation Officer in Los Fresnos, Texas made the determination, and its contents were read to Petitioner in Somali. *Id.* The Form I-286 sets no expiration date for the release. *Id.*

25. The same day, ICE issued an Interim Notice Authorizing Parole citing INA § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A). Ex. D at 1. The notice stated that parole was valid for one year and would end at the close of that period "unless ICE provides you with an extension at its discretion," and that "ICE may also terminate parole on notice prior to the automatic termination date." *Id.* It conditioned Petitioner's release on notifying ICE and the immigration court of any address change, reporting for every hearing and every ICE appointment, and obeying the law. *Id.*

26. ICE released Petitioner to 8882 Cerritos Avenue, Apt. E1, Anaheim, California 92804, and directed him to report in person to ICE's Santa Ana Sub-Office, 34 Civic Center Plaza, Santa Ana, California, on February 3, 2025. Ex. D at 2.

27. ICE's records thus describe the December 6, 2024 release both as a custody determination under INA § 236 (Ex. C) and as parole under INA § 212(d)(5)(A) (Ex. D). ICE issued both documents on the same day, in the same case.

**C. Full Compliance with Release Conditions (2024–2026)**

28. From his release on December 6, 2024 until his re-detention on October 15, 2026, Petitioner reported to ICE as directed at every scheduled check-in, beginning with his February 3, 2025 report to the Santa Ana Sub-Office. *See* Ex. D at 2. He complied with every condition of his release.

29. Throughout that period, Petitioner lived at the address he gave ICE on release. ICE's September 30, 2026 letter was addressed to him there. *Compare* Ex. D at 2, *with* Ex. E.

30. When the one-year parole period reached its stated end on December 6, 2025, ICE neither extended it in writing nor notified Petitioner that his parole or release had ended. ICE instead continued to supervise Petitioner on release. Its September 30, 2026 letter warned him that "[f]ailure to comply with the conditions of this order may result in the revocation of your release." Ex. E.

31. Petitioner has applied for asylum. His application remains pending.

32. Since his release, Petitioner has never been arrested, charged, or convicted of any offense.

**D. Re-Detention at a Scheduled Check-In (October 15, 2026)**

33. On September 30, 2026, ICE Deportation Officer Yim issued a call-in letter (Form G-56) directing Petitioner to report to ICE's office at 34 Civic Center Plaza, Room 1027, Santa Ana, California, on October 15, 2026 at 7:30 a.m. Ex. E. The letter gave the reason for the appointment as "[t]o discuss the status of your immigration case and make any necessary custody or program adjustments," and told Petitioner to bring identification "and any other documents that you want considered during your case review." *Id.*

34. The letter did not state that ICE intended to revoke Petitioner's release or take him into custody. It identified no violation of any condition of release, no change in circumstances, and no evidence against him. *Id.*

35. On October 15, 2026, Petitioner appeared as directed. ICE officers took him into custody at the check-in.

36. ICE gave Petitioner no reason for the arrest. Before the arrest, ICE gave him no written notice that his parole was terminated or his release revoked, no statement of reasons, and no opportunity to respond before a neutral decisionmaker.

37. ICE identified no violation of release conditions, no new criminal history, and no other change in circumstances. None exists. *See* ¶¶ 28–32.

38. ICE then transferred Petitioner to the Adelanto ICE Processing Center, where he remains.

39. Petitioner's removal proceedings are now pending before the Adelanto Immigration Court, where his asylum application remains pending. Petitioner has not received a bond hearing. No neutral decisionmaker has reviewed his re-detention, and no such review is scheduled.

## VI. CLAIM FOR RELIEF: VIOLATION OF PROCEDURAL DUE PROCESS (FIFTH AMENDMENT)

40. Petitioner incorporates paragraphs 1 through 39.

41. The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property, without due process of law." Its protection extends to every person in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Freedom from imprisonment . . . lies at the heart of the liberty that Clause protects." *Id.* at 690. A procedural due process claim proceeds in two steps: whether the petitioner holds a protected liberty interest, and, if so, what procedures are required before the government may deprive him of it. *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022); *G.A. v. Santacruz*, No. 5:26-cv-05538-RAO, Dkt. 11 at 2–3 (C.D. Cal. Oct.

9, 2026). Respondents deprived Petitioner of a protected liberty interest without notice and without a pre-deprivation hearing (¶¶ 33–39).

**A. Petitioner Has a Protected Liberty Interest**

42. A person released from custody on conditions holds a liberty interest that "includes many of the core values of unqualified liberty," and its termination "inflicts a grievous loss." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). That interest cannot be revoked without notice and a hearing. *Id.* at 485–89; *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973); *Young v. Harper*, 520 U.S. 143, 147–49 (1997).

43. Courts in this Circuit apply these principles to noncitizens whom ICE released and then re-arrested. *See Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969–70 (N.D. Cal. 2019); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (release creates "an implicit promise" that liberty will be revoked only for violation of its conditions (quoting *Morrissey*, 408 U.S. at 482)). Courts in this District now consistently find a protected liberty interest on such facts. *G.A.*, Dkt. 11 at 3; *Khushvaktov v. Santacruz*, No. 5:26-cv-04539-AJR, Dkt. 11 at 6–7 (C.D. Cal. Aug. 24, 2026); *Bekhoev v. Marin*, No. 5:26-cv-00206-RAO, Dkt. 25 at 7–9 (C.D. Cal. Apr. 28, 2026). That interest does not lapse when a parole document expires. *Bekhoev*, Dkt. 25 at 8 n.2.

44. Petitioner holds that interest. ICE released him on December 6, 2024, and for more than twenty-two months he lived at the address he gave ICE, reported as directed, and complied with every condition of release (¶¶ 24–32). *See Bekhoev*, Dkt. 25 at 8–9. Throughout that time he pursued his asylum application, and Congress has provided that time during which a bona fide asylum application is pending does not count as unlawful presence. 8 U.S.C. § 1182(a)(9)(B)(iii)(II). ICE itself treated Petitioner as on release until the day it arrested him (¶ 30).

45. *DHS v. Thuraissigiam*, 591 U.S. 103 (2020), does not change this result. *Thuraissigiam* addressed the scope of habeas review of an expedited removal order entered against a noncitizen apprehended shortly after crossing the border. It did not

address the physical re-detention of a person whose expedited removal order DHS itself vacated, whom DHS placed in full § 240 proceedings, and whom ICE then released into the interior for nearly two years (¶¶ 23–32). Petitioner does not challenge any removal order or seek admission through this petition; he challenges the government's withdrawal, without process, of liberty the government itself conferred. Courts in this District have granted relief over the government's argument that released noncitizens remained "arriving aliens" or applicants for admission not entitled to a hearing. *Isiev*, Dkt. 10 at 4–9 (ordering release); *Isiev*, Dkt. 14 (C.D. Cal. Apr. 1, 2026) (preliminary injunction); *see Bekhoev*, Dkt. 25 at 7–9.

46. ICE's own Notice of Custody Determination states that it released Petitioner under INA § 236 and 8 C.F.R. part 236 (¶ 24). Release under § 236 on conditions other than bond is a form of "conditional parole" under 8 U.S.C. § 1226(a)(2)(B). ICE may revoke such release, 8 U.S.C. § 1226(b); 8 C.F.R. § 236.1(c)(9), but that authority operates within the Constitution's limits. Re-arrest of a released noncitizen generally requires a material change in circumstances. *See Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981); *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021). ICE identified none (¶ 37), and the Form I-286 release carried no expiration date (¶ 24).

47. If the December 2024 release was instead parole under 8 U.S.C. § 1182(d)(5)(A), as the Interim Notice Authorizing Parole states (¶ 25), the result is the same. DHS's regulations allow termination of parole before the end of its term only "upon written notice to the alien," 8 C.F.R. § 212.5(e)(2)(i), and ICE's own notice promised that any early termination would be "on notice" (Ex. D at 1). An agency must follow its own regulations. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). Respondents may argue that the parole lapsed automatically on December 6, 2025. ICE did not treat it that way. It continued to supervise Petitioner on release for more than ten months afterward, and on September 30, 2026 it warned him that noncompliance "may result in the revocation

of your release" (¶ 30). ICE cannot treat Petitioner's release as continuing for purposes of supervision and as already expired for purposes of process. And in any event, the liberty interest does not lapse with the parole document. *Bekhoev*, Dkt. 25 at 8 n.2.

48. The label does not change the constitutional analysis. Under either characterization, the government conferred conditional liberty on Petitioner and he relied on it for nearly two years. Any inconsistency in the record is the government's own (¶ 27).

**B. The *Mathews* Factors Required a Hearing Before Re-Detention**

49. The process due before a deprivation of liberty is determined by balancing (1) the private interest affected, (2) the risk of erroneous deprivation under the procedures used and the probable value of additional safeguards, and (3) the government's interest, including the burden of additional procedures. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The Ninth Circuit applies *Mathews* to immigration detention. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206–07 (9th Cir. 2022). Ordinarily, due process requires a hearing before the deprivation occurs. *Zinermon v. Burch*, 494 U.S. 113, 127, 132 (1990). Each factor weighs in Petitioner's favor.

50. The private interest is at its weightiest. The interest at stake is freedom from physical confinement, "the core of the liberty protected by the Due Process Clause." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *Zadvydas*, 533 U.S. at 690. Here it is liberty the government already granted and on which Petitioner relied for nearly two years (¶ 44). Detention also impairs his ability to pursue his pending asylum application (¶¶ 31, 39).

51. The risk of erroneous deprivation is at its highest because ICE used no meaningful procedure at all. *Morrissey* sets the floor for revoking conditional liberty: written notice of the claimed violation, disclosure of the evidence, an opportunity to be heard before a neutral decisionmaker, and a written statement of reasons. 408

U.S. at 489. Petitioner received none of them (¶¶ 36, 39). ICE's call-in letter is no substitute. It invited Petitioner to bring documents for a "case review," but it gave no notice that ICE proposed to revoke his release, identified no claimed violation and no evidence, and led to no hearing before a neutral decisionmaker and no written statement of reasons (¶¶ 33–36).

52. The record shows no basis for detention. Petitioner reported as directed at every check-in and lived at the address he gave ICE (¶¶ 28–29). He has no arrests (¶ 32). He has a pending asylum application and every incentive to pursue it (¶¶ 31, 39). Civil immigration detention is justified only to prevent flight or danger. *Zadvydas*, 533 U.S. at 690. ICE's decision to release Petitioner necessarily reflected its judgment that he presented neither, *Rasulov v. Santacruz*, No. 5:26-cv-01815-AJR, Dkt. 12 at 6 & n.1 (C.D. Cal. Apr. 22, 2026); *Isiev*, Dkt. 10 at 7, and nothing has changed since (¶ 37).

53. The value of the missing safeguard is correspondingly high. Written notice and a hearing before a neutral decisionmaker, at which the government must justify detention, would have prevented this deprivation. And no post-deprivation hearing can cure the violation, for three independent reasons.

54. First, the deprivation was planned, not random. ICE scheduled the October 15, 2026 appointment fifteen days in advance, by a letter that expressly contemplated "custody . . . adjustments," and arrested Petitioner when he appeared as directed (¶¶ 33–35). ICE had ample time to give notice and a hearing. Where a deprivation is predictable and pre-deprivation process is feasible, post-deprivation process does not satisfy due process. *Zinermon*, 494 U.S. at 136–39 (distinguishing *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Hudson v. Palmer*, 468 U.S. 517 (1984)); *see Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). A hearing may be postponed only in extraordinary situations demanding very prompt action, *Fuentes v. Shevin*, 407 U.S. 67, 82, 90–92 (1972), and a routine scheduled check-in is the opposite of one.

55. Second, liberty lost to confinement cannot be restored after the fact. Each day in Adelanto is a completed injury that no later hearing can undo.

56. Third, no post-deprivation hearing is available. Respondents' position is that Petitioner is ineligible for bond and that immigration judges cannot review his custody (¶ 17). Petitioner has been detained since October 15, 2026 without review of any kind (¶ 39), and post-deprivation relief would risk leaving him detained indefinitely without process. *See Bekhoev*, Dkt. 25 at 10 (citing *Juarez Fernandez v. Semaia*, No. CV 25-3412-SPG (MBK), 2026 WL 136229, at *6 (C.D. Cal. Jan. 13, 2026)).

57. The government's interest, by contrast, is minimal. Its legitimate interests are ensuring Petitioner's appearance and protecting the community, and his existing release conditions served both for nearly two years (¶¶ 28–32). Nothing has changed (¶ 37). The government has no legitimate interest in detaining a person who presents neither a flight risk nor a danger. *Zadvydas*, 533 U.S. at 690–91.

58. The burden of additional process is slight. Petitioner was already in ICE's office on a date ICE chose. Custody hearings are routine and impose minimal cost. *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025); *G.A.*, Dkt. 11 at 3–4. Continued supervision on release also costs less than detention.

### C. The Remedy Is Immediate Release on Prior Conditions

59. All three *Mathews* factors favor Petitioner, and his re-detention without notice or a pre-deprivation hearing violates the Due Process Clause. Habeas relief aims to put the petitioner back where he would have been absent the violation. *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013). Here that is immediate release on the conditions in effect before October 15, 2026. A bond hearing held now would not cure the violation; it would ratify the unlawful arrest and shift to Petitioner, from inside a detention facility, the burden the government never carried. Courts in this District so hold. *Khushvaktov*, Dkt. 11 at 8–9 (release restores "the last uncontested status," and a post hoc bond hearing cannot cure an invalid re-detention; collecting

cases); *G.A.*, Dkt. 11 at 4; *Bekhoev*, Dkt. 25 at 11. That is especially so where, as here, DHS vacated the expedited removal order, placed Petitioner in full removal proceedings, and ICE itself chose to release him (¶¶ 23–26).

60. To prevent recurrence, any future re-detention should be preceded by at least seven days' written notice stating the specific condition of release Petitioner allegedly violated and the supporting facts, and a pre-deprivation bond hearing before an immigration judge. At that hearing the government should bear the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or a danger and that no condition or combination of conditions could reasonably assure his appearance and the community's safety. *See Khushvaktov*, Dkt. 11 at 10, 12; *Isiev*, Dkt. 14 at 5.

**D. A Limited Permanent Injunction Is Warranted**

61. Habeas relief is not limited to discharge from custody; the Court may dispose of the matter "as law and justice require." 28 U.S.C. § 2243; *Carafas v. LaVallee*, 391 U.S. 234, 239 (1968); *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). A permanent injunction issues where the petitioner shows (1) irreparable injury; (2) that remedies at law are inadequate; (3) that the balance of hardships favors equitable relief; and (4) that the public interest would not be disserved. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Where the government opposes relief, the last two factors merge. *Garcia v. County of Alameda*, 150 F.4th 1224, 1234 (9th Cir. 2025).

62. Each factor is met. Petitioner has suffered irreparable injury through detention in violation of due process (¶¶ 33–39), and the risk of repetition is concrete. Release returns him to scheduled check-ins at the office where he was seized, which expose him to more risk of re-detention than the average person. *Matta v. Noem*, 2026 U.S. Dist. LEXIS 95844, at *5 (C.D. Cal. Apr. 29, 2026); *see Ramirez v. Mullin*, 2026 U.S. Dist. LEXIS 186848 (C.D. Cal. Aug. 17, 2026). Damages cannot cure a deprivation of liberty, and the right to a pre-deprivation hearing can be

enforced only before re-arrest. *Cu v. Marin*, 2026 U.S. Dist. LEXIS 113202, at *3 (C.D. Cal. May 21, 2026) (quoting *Jorge M.F. v. Jennings*, 534 F. Supp. 3d 1050, 1056 (N.D. Cal. 2021)). Requiring basic process before any future re-detention imposes little burden; the alternative forces Petitioner to suffer detention again and seek habeas relief anew. *Khushvaktov*, Dkt. 11 at 10–11.

63. The relief is narrow. It runs to Petitioner alone and does not bar re-detention; it requires only notice and a hearing first. *See United States v. Mendoza*, 464 U.S. 154, 162 (1984); *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 767 (1994). Courts in this District have rejected the argument that prospective relief is inappropriate in immigration habeas. *Khushvaktov*, Dkt. 11 at 11 (citing *Huy Cu v. Marin*, 2026 WL 1427009, at *1–3 (C.D. Cal. May 21, 2026), and *Araujo-Contreras v. Janecka*, 2026 WL 1625368, at *1–4 (C.D. Cal. June 3, 2026)); *G.A.*, Dkt. 11 at 4; *Isiev*, Dkt. 14 at 5–6.

**PRAYER FOR RELIEF**

Petitioner respectfully asks the Court to:

(1) Assume jurisdiction over this matter;

(2) Order Respondents to show cause within three days why the writ should not be granted, and to identify the statutory provision they contend authorizes Petitioner's detention, state any condition of release he allegedly violated, and lodge the arrest warrant, Form I-213, and any record of the decision to revoke his release, 28 U.S.C. § 2243;

(3) Declare that Respondents' re-detention of Petitioner without notice and a pre-deprivation hearing violates the Due Process Clause of the Fifth Amendment;

(4) Issue a writ of habeas corpus ordering Respondents to release Petitioner immediately, subject only to the conditions of release in effect before October 15, 2026, to return his documents and property upon release, and to file a notice of compliance within two business days of release;

(5) Permanently enjoin Respondents from re-detaining Petitioner without (a) at least seven days' written notice stating the specific condition of release he allegedly violated and the supporting facts, and (b) a pre-deprivation bond hearing before an immigration judge, at which the government must prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no condition or combination of conditions could reasonably assure his appearance and the community's safety;

(6) Order Respondents not to transfer Petitioner outside the Central District of California while this petition is pending;

(7) Award reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and

(8) Grant any other relief the Court deems just and proper.

Dated: October 30, 2026 Respectfully submitted,

/s/ Magomed Gusein Gasanov
Magomed Gusein Gasanov
MGG Law, PC
Attorney for Petitioner

**VERIFICATION BY COUNSEL PURSUANT TO 28 U.S.C. § 2242**

I, Magomed Gusein Gasanov, declare as follows:

1. I am an attorney admitted to practice in California and before this Court. I represent Petitioner Mohamed Adan Dahir in this matter.

2. I submit this verification on Petitioner's behalf, as 28 U.S.C. § 2242 permits, because he is detained at the Adelanto ICE Processing Center. Obtaining his signature before filing would delay relief from ongoing detention.

3. I have read the foregoing Verified Petition for Writ of Habeas Corpus.

4. The factual statements in the Petition are based on (a) my review of the documents attached as Exhibits A through E; and (b) my communications with Petitioner and with persons acting on his behalf.

5. Exhibits A through E are true and correct copies of documents provided to me on Petitioner's behalf, as identified in the Exhibit Index.

6. Based on that review and those communications, the facts stated in the Petition are true and correct to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on October 30, 2026, at Beverly Hills, California.

/s/ Magomed Gusein Gasanov
Magomed Gusein Gasanov